Filed 6/10/21  P. v. AWI Builders CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> AWI BUILDERS, INC., et al., <br><br> Defendants and Appellants; <br><br> ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE et al., <br><br> Respondents. | G059004 <br><br> (Super. Ct. No. 30-2018-00974579) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Dismissed in part and affirmed in part.

Pacheco & Neach, Rod Pacheco and Brian Neach for Defendants and Appellants.

No appearance for Plaintiff.

Leon J. Page, County Counsel, Rebecca S. Leeds, Deputy County Counsel, for Respondents.

\*        \*        \*

# INTRODUCTION

Defendants AWI Builders, Inc., Construction Contractors Corporation, Zhirayr Mekikyan, Anna Mekikyan, and Tigran Oganesian (collectively, AWI) moved to compel answers to questions at a nonparty deposition. The trial court denied the motion and imposed monetary sanctions against AWI and AWI's trial counsel in the sum of $6,192.29 for misuse of the discovery process. The trial court found that AWI's counsel had misused the discovery process by failing to meet and confer with opposing counsel in a reasonable and good faith attempt to resolve the dispute, as required by Code of Civil Procedure sections 2016.040 and 2025.480, subdivision (c). (All code references are to the Code of Civil Procedure.)

AWI appealed from the order denying its motion to compel answers to deposition questions and imposing monetary sanctions. AWI's trial counsel, though jointly and severally liable for the monetary sanctions, did not file a notice of appeal.

We lack jurisdiction over AWI's appeal from the order denying AWI's motion to compel answers to deposition questions because that order is not immediately appealable. That portion of the appeal is dismissed. Applying the abuse of discretion standard of review, we conclude the trial court did not err by imposing monetary sanctions and therefore affirm the order imposing sanctions against AWI and AWI's counsel.

## FACTS AND PROCEDURAL HISTORY

### I.

### The Discovery Dispute

In April 2019, AWI served a subpoena for the personal appearance of Donde McCament, a nonparty, at a deposition. McCament was an employee of the Office of the Orange County District Attorney (the District Attorney's Office) and in the past had conducted a criminal investigation in preparation for filing charges against AWI.

2

Disputes over her appearance at a deposition prompted AWI to bring a motion to compel compliance with the subpoena. The trial court granted the motion and ordered McCament to appear for a deposition.

Counsel for AWI, Lauren Johnson-Norris, took McCament's deposition on August 15 and 19, 2019. McCament was represented at the deposition by deputy county counsel Rebecca S. Leeds of the Office of County Counsel of Orange County (County Counsel). The parties have radically different accounts of what transpired during McCament's deposition. According to AWI, "[o]ver the course of those two days, consistent with McCament's attempts to stonewall Defendants' discovery of relevant information to use in their defense, McCament, through her counsel, offered blanket and meritless objections to approximately 200 questions." According to McCament, "[t]he deposition went forward with what can only be described as two full days of verbal abuse and badgering by Appellants' counsel, during which McCament provided substantive testimony in response to most of the questions asked."

Two points about the deposition cannot be disputed. First, the deposition was highly contentious. Second, Leeds asserted the attorney work product doctrine, official information privilege, and/or attorney-client privilege to a large number of questions and McCament, often at the instruction of Leeds, declined to answer many of those questions.

Attorney Johnson-Norris and attorney Leeds agreed to conduct a telephonic meet and confer conference on September 24, 2019. On September 16, Leeds sent Johnson-Norris an e-mail stating: "[I]t would be helpful for the purposes of focusing our discussion if you would provide us with a list of the deposition questions where you believe that the witness was erroneously instructed not to answer. We not only believe that this will provide for a more meaningful exchange, but it is something that you would need to prepare anyway for your separate statement in support of a motion to compel."

3

In response, Johnson-Norris prepared a compilation of 169 deposition questions to which Leeds had objected and instructed the witness not to answer. The compilation consisted of verbatim passages from the deposition transcripts and did not cite legal authority. Johnson-Norris provided this compilation to Leeds on September 23, 2019, the day before the scheduled telephonic conference.

On September 24, before the telephone conference began, Leeds sent Johnson-Norris an e-mail stating: "We believe that the objections made at the deposition on Ms. McCament's behalf, and subsequent instructions not to answer, were meritorious. What we were looking for from you was an indication of which of those objections and instructions you believe are invalid and the reasons why. We would like to avoid unnecessary law and motion practice; therefore, if you can articulate why you believe particular objections/instructions were unwarranted we could then revisit those particular questions and hopefully reach a mutually agreeable resolution that does not require court intervention. Given the number of questions we believe intruded into the area of work product doctrine/official information privilege, we were optimistic that a response from you to our objections in advance of our meet and confer, in good faith, would inform our discussions."

The parties have radically different ideas about what happened during the conference. Soon after the conference on September 24, 2019, Leeds sent Johnson-Norris an e-mail setting out Leeds's version of the conference. Leeds stated: "As I indicated to you on the phone, we were prepared to discuss each and every question and objection with you in good faith, as the law requires, to see if we could reach common ground on any of them, or even go through them by subject matter. . . . We were admittedly surprised and disappointed when you refused to participate in the meet and confer process, refusing to engage in any meaningful discussion whatsoever, and even going as far as to state that the purpose of our call was not to discuss the legal basis

4

for our objections and your response but, rather, that it was simply our obligation to notify you, without additional discussion, whether or not Ms. McCament would appear and testify to those questions again. We again offered to discuss each question with you and you refused, ultimately hanging up the phone. [¶] At best, we believe that you may have a misunderstanding as to what it means to meet and confer in good faith. Your obligation is <u>exactly</u> to discuss the legal issues surrounding what we believe are meritorious objections grounded in longstanding doctrines of attorney work product and official information privilege. That is, by definition, what a 'meet and confer' contemplates and requires."

Johnson-Norris responded on September 29, 2019 with an e-mail giving her version of the meet and confer: "Despite your best efforts to derail the meet and confer, a meet and confer took place and our obligation to meet and confer with you prior to filing a motion to compel *was* satisfied. [¶] As you should recall, I made it clear that this call was our scheduled meet and confer. You acknowledged I emailed you all of the questions to which you instructed Ms. McCament not to answer. Instead of talking about them with me, you immediately began to quarrel that my email was insufficient as I had not presented you any legal authority that you believe I am required to produce prior to a meet and confer. It should be noted that you provided me nothing prior to our meet and confer. I told you it is our position that Ms. McCament is required to answer these relevant questions and that she cannot shield herself behind a blanket claim of work product doctrine or official information privilege. I also told you that I have read the law and assume you have read the law, and it is not my job to provide you the law or get you to agree with me on [it], but rather to discuss whether you were going to permit Ms. McCament to appear and answer any of the questions I provided you. [¶] You attempted to de[r]ail the meet and confer by insisting repeatedly that I explain to you again what our basis is for seeking the relevant information we seek and insisting that I explain to you

5

how your legal analysis is wrong. You repeatedly talked over me, argued with me, used a loud voice, told me again and again that I was **not** meeting and conferring in good faith if I did not provide the authority you wanted, and threatened repeatedly to argue to the court that [we] did **not** have a meet and confer. [¶] . . . [¶] I did my best to discuss the questions with you, starting with Question 1, by reading it to you. I could barely get a word in before you started talking over me and arguing with me about your belief that I don't know what it means to meet and confer because I did not provide you legal authority to demonstrate why your position is wrong. . . . As opposed to continuing to have you speak over me, interrupt me, and threaten to report my non-compliance with your demands to the judge, I informed you I would be ending the call and did."

Leeds responded on October 1, 2019 with an e-mail recognizing that she and Johnson-Norris "have a very different perspective as to what took place" at the meet and confer on September 24. Leeds wrote in the e-mail: "You . . . provided a list of *all* the questions that the witness was instructed not to answer, including those questions where the objections were withdrawn on the record or re-framed by Mr. Pacheco. We nevertheless agreed to go question by question but, in response to the very first question, it was you who stated that you only wanted to know whether or not we would re-produce Ms. McCament again or not. Contrary to the assertions in your email, you made it very clear that you were unwilling to entertain any discussion . . . if we continued to ask for your legal position as to why you believe we should reconsider withdrawing the objection stated. I responded by telling you that the Code of Civil Procedure requires some meaningful legal discussion for a proper meet and confer—not a one-sided confirmation . . . whether or not we would agree to unilaterally withdraw all of our objections and re-produce the witness without further discussion. [¶] . . .[¶] Moreover, if you continue to maintain that our mutual meet and confer obligations only require us, on behalf of Ms. McCament and the District Attorney's office, to reconsider our objections in a vacuum

6

without any meaningful input from your side, then perhaps we will ultimately require further guidance from the court."

## II.

## Motion to Compel Answers to Deposition Questions

AWI filed a "motion to compel Donde McCament's testimony" (the motion to compel) on November 1, 2019 and served it on the District Attorney's Office (which represents the plaintiff, the People of the State of California) on November 4, 2019. AWI did not serve the motion to compel on County Counsel (which represents McCament) until December 12, 2019. In a declaration submitted in support of the motion to compel, Johnson-Norris stated, "Despite best efforts on my part, the meet and confer was not fruitful."

McCament and the District Attorney's Office, both represented by County Counsel, filed opposition to the motion to compel and requested sanctions in the amount of $11,865.56 against AWI and its counsel for misuse of the discovery process. The asserted misuse of the discovery process included "repeated failure to meet and confer in good faith, harassment and abuse of the witness and her counsel during the entirety of the two-day deposition, and seeking testimony relating to matters that have already been deemed improper by orders of this court."

In a declaration submitted in opposition to the motion to compel, Leeds stated: "On September 24, 2019, I participated along with my colleague, Kayla Watson . . . in what was supposed to be a telephonic meet and confer. . . . [¶] The discussion began amicably, though Johnson-Norris prefaced it with the statement that the telephone conference would, in no uncertain terms, constitute our meet and confer. I agreed. However, Johnson-Norris then refused to engage in any meaningful discussion whatsoever, even going as far as to state that the purpose of our call was not to discuss the legal basis for our objections and her response but, rather, that it was simply our

obligation to notify her, without any additional discussion, whether or not McCament would appear and testify to those questions again. We again offered to discuss each question with her individually, but she refused, ultimately hanging up the phone."

The trial court denied the motion to compel on the ground it was untimely. A motion to compel a deponent to answer a question must be "made no later than 60 days after the completion of the record of the deposition." (§ 2025.480, subd. (b).) The court found that the reporter had notified the parties on September 3, 2019 that the record of the McCament deposition was completed, AWI had filed the motion to compel on November 1, 2019, and AWI did not serve the motion on County Counsel (McCament's counsel) until December 12, 2019, which was 100 days after the reporter had notified the parties that the record of the deposition was completed. Because a motion is deemed to have been made "upon the due service and filing of the notice of motion" (§ 1005.5), the court concluded the motion to compel was untimely.

The trial court granted the request for sanctions and awarded sanctions in the amount of $6,192.29 jointly and severally against AWI and AWI's counsel. The trial court awarded sanctions on the ground that Johnson-Norris did not satisfy her obligation to meet and confer before bringing the motion to compel. The court found: "The declarations of McCament's counsel (Leeds and Watson), and the correspondence between counsel demonstrate[] moving party failed to appropriately meet and confer in good faith. Plaintiff['s] counsel assert that Defendants' counsel, Lauren Johnson-Norris, failed to discuss any of the individual objections, or provide a legal basis as to why the deponent's objections were unfounded. This is certainly credible, as Ms. Johnson-Norris, in her own correspondence, admits: [¶] 'I told you it is our position that Ms. McCament is required to answer these relevant questions and that she cannot shield herself behind a blanket claim of work product doctrine or official information privilege. I also told you that I have read the law and assume you have read the law, and it is not my job to provide

8

you the law or get you to agree with me on [it], but rather to discuss whether you were going to permit Ms. McCament to appear and answer any of the questions I provided you.' [¶] This is not a proper meet and confer effort. [¶] . . . [¶] In their motion, Defendants explain—with citation to authority—how the work product doctrine does not apply to the questions at hand, and the limits of the official information privilege. This is the type of discussion which should have ensued between counsel during the meet and confer process. Indeed, defendants' misunderstanding of the process is manifest in Ms. Johnson-Norris'[s] protest to Plaintiff['s] counsel: 'You attempted to de[r]ail the meet and confer by . . . insisting that I explain to you how your legal analysis is wrong.' [¶] Requesting that Defendants' explain how Plaintiff['s] legal analysis is wrong does not represent a derailing of the meet and confer process; it is the very essence of it. [Citation.] [¶] Moreover, Defendants made no attempt to discuss any of the individual questions asked, and why, under the law, an answer should have been given. Indeed, it appears that at points in the deposition, instructions not to answer were withdrawn and an answer provided by the witness, yet these questions remained a part of the motion to compel."

AWI filed a notice of appeal on March 17, 2020. Plaintiff, the People of the State of California, has not appeared in this appeal. The District Attorney's Office and McCament (together, Respondents) have filed a respondents' brief.

## DISCUSSION

### I.

### There Is No Appellate Jurisdiction Over the Appeal from the Order Denying the Motion to Compel.

Respondents argue we lack jurisdiction over the appeal from the order denying the motion to compel. We agree.

9

Discovery orders are not directly appealable:  They are appealable only from a final judgment.  (*Hanna v. Little League Baseball, Inc.* (2020) 53 Cal.App.5th 871, 875, fn. 6; *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 561; *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1060.)  A limited exception has been recognized to permit review of an order granting terminating sanctions as part of an appeal from an order directing payment of sanctions in an amount greater than $5,000[1] if the monetary sanctions were based on the same conduct that led to the terminating sanctions, and "the two are inextricably intertwined."  (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 276, disapproved on another ground in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)  Terminating sanctions were not imposed in the present case, and the sanctions order is not intertwined with the order denying the motion to compel.

Some discovery orders can be reviewed on appeal pursuant to section 906, which allows an appellate court with jurisdiction over an appeal from a final judgment or order to consider intermediate rulings.  Section 906 (which AWI does not cite) states in relevant part:  "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party. . . ."  (See *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 572, fn. 1 ["The discovery orders are not independently appealable, but we will review them under section 906"].)

But the order denying the motion to compel does not necessarily affect the sanctions order or involve its merits.  The sanctions order was based on counsel's conduct during the meet and confer process while the motion to compel was based on

---

[1]  An order directing a party or an attorney for a party to pay sanctions in an amount greater than $5,000 is directly appealable.  (§ 904.1, subd. (a)(12).)

10

conduct during the deposition of McCament and was denied on the ground of untimeliness.  Reversal of the order denying the motion to compel would not necessarily result in reversal of the sanctions order, and reversal of the sanctions order would not necessarily result in reversal of the order denying the motion to compel.  AWI has not asked us to treat its appeal as a petition for writ of mandate.  (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401 [court has discretion to treat improper appeal as petition for writ of mandate in unusual circumstances].)

## II.

### The Trial Court Did Not Err by Granting
### the Request for Sanctions

#### A.  *Standard of Review*

"Orders regarding discovery are reviewed under the abuse of discretion standard.  [Citations.]  The trial court has broad discretion in deciding whether to impose sanctions and in setting the amount of monetary sanctions."  (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).)  In particular, the determination whether an adequate attempt was made to informally resolve a discovery dispute is reviewed under the abuse of discretion standard.  (*Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1016 (*Stewart*).)

The test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason.  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.) "In applying the abuse of discretion standard, the reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal criteria."  (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.)  The governing law limits the scope of the trial court's discretion, and a decision that exceeds those limits constitutes an abuse of discretion.  (*Ibid*.)

11

"The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo. [Citation.] It is up to the trial court to weigh the evidence, resolve conflicts in it, and assess the credibility of witnesses. [Citation.] The reviewing court resolves any evidentiary conflicts most favorably to the trial court's ruling [citation], and, if more than one reasonable inference can be deduced from the facts, the reviewing court must accept the inference supporting the trial court's decision [citation]." (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.)

B. *Substantial Evidence Supports the Trial Court's Finding that AWI's Counsel Did Not Confer in a Reasonable and Good Faith Attempt to Resolve the Discovery Dispute*

A trial court may impose monetary sanctions against anyone who has engaged in a misuse of the discovery process. (§ 2023.030, subd. (a); *Cornerstone, supra*, 56 Cal.App.5th at p. 790.) Misuses of the discovery process include: "Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that an attempt at informal resolution has been made." (§ 2023.010, subd. (i).)

A motion to compel a deponent to answer a question must be accompanied by a meet and confer declaration under section 2016.040. (§ 2025.480, subd. (b).) Section 2016.040 states: "A meet and confer declaration in support of a motion shall state facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion."

The case law does not provide detail about what constitutes a reasonable and good faith attempt to resolve a discovery dispute. Much is left to a trial court's discretion to determine reasonableness and good faith under the particular circumstances

12

of each case:  "'The history of the litigation, the nature of the interaction between counsel, the nature of the issues, the type and scope of discovery requested, the prospects for success and other similar factors can be relevant.'"  (*Stewart, supra*, 87 Cal.App.4th at p. 1016.)  At a minimum, the law requires "a serious effort at negotiation and informal resolution" and that "counsel attempt to talk the matter over, compare their views, consult, and deliberate."  (*Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1438, 1439.)

As we informed counsel during oral argument, our review of the record leaves us troubled by the performances in discovery by counsel on both sides of the case.  AWI's counsel should have met and conferred.  Counsel for respondents should have been more forthcoming with facts to satisfy her burden of establishing the preliminary facts necessary to support claims of attorney-client privilege (see *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733) and attorney work product (see *Citizens of Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 911). Our task in this appeal is, however, only to determine whether the trial court abused its discretion by imposing sanctions against AWI and its counsel.  The requisite deference to the trial court's factual findings and credibility determinations leads us to conclude the trial court did not err.

Substantial evidence supports a finding that Johnson-Norris did not make a serious effort at negotiation and informal resolution of the discovery disputes.  The trial court in the present case found that AWI's counsel did not meet and confer in good faith. In making this finding, the court considered the Leeds declaration, the Johnson-Norris declaration, and the e-mail exchange between them.  According to Leeds, Johnson-Norris was unwilling to discuss the discovery issues, participated in the meet and confer only to learn whether Leeds would produce McCament again for her deposition, was unwilling to provide any legal authority to support her claim that Leeds should withdraw her objections, and would not go through and discuss the questions which McCament had

13

declined to answer. The court found Leeds to be credible and accepted this version of events. We accept the trial court's determination of the credibility of witnesses presenting testimony by declaration. (See *Cornerstone, supra*, 56 Cal.App.5th at p. 805.)

Of particular importance to the trial court was the refusal by Johnson-Norris to explain why she believed the objections posed by Leeds lacked merit and to discuss the individual questions asked at the deposition. The trial court did not legally err by concluding such conduct constituted a misuse of the discovery process. In order for counsel to discuss the issues, deliberate, and attempt to negotiate a resolution of the dispute, as the law requires, it was necessary for Johnson-Norris to provide legal authority for her positions and to explain how Leeds was wrong. This was, the trial court said, "[t]he very essence of" the meet and confer process. Johnson-Norris could have at least provided Leeds with some of the authorities and arguments that eventually were presented in the motion to compel.

AWI argues the trial court erred because it credited only Leeds's version of events and "appears to have completely disregarded the efforts Ms. Johnson-Norris made to meet and confer by phone and the abuse to which [she] was subjected [to] by [Leeds]."[2] AWI claims that Johnson-Norris "rightfully believed that the parties were at an impasse and that a motion was necessary." These arguments ignore the standard of review: Witness credibility is within the trial court's "exclusive province" and we must accept the trial court's determination of witness credibility. (See *Cornerstone, supra*, 56 Cal.App.5th at p. 805.) Leeds and Johnson-Norris each claimed the other had tried to derail the meet and confer and had behaved unprofessionally. In her e-mails, Leeds expressed a belief that the parties might be able to "reach common ground" on some of

---

[2]  In the appellant's opening brief, AWI quotes a portion of argument made by Johnson-Norris at the hearing on the motion to compel as support for this assertion. Argument of counsel is not made under oath and is not evidence. (*El Dorado Irrigation Dist. v. Superior Court* (1979) 98 Cal.App.3d 57, 62.)

14

the issues in dispute. The trial court, both expressly and impliedly, believed Leeds, and we accept the trial court's credibility determination and resolution of any conflicts in the evidence. We accept inferences supporting the trial court's decision (*id.* at p. 789), and, from the evidence, a reasonable inference could be drawn that the parties were not at an impasse when the meet and confer concluded.

AWI argues the trial court's decision to impose sanctions "improperly appears to apply bright line rules to the meet and confer process—e.g., that a party must discuss the individual deposition questions at issue, one by one, before filing a motion." We do not interpret the trial court's ruling in that way. The trial court imposed sanctions because Johnson-Norris declined to discuss *any* deposition objections and refused to provide any legal authority to support her position. Moreover, the scope and requirements of a meet and confer depend on the circumstances of each case, and, under the circumstances present in this case, the trial court would not have abused its discretion if it had concluded that counsel were required to go through each question, either one by one, or by category.

AWI asserts that objections and discussions during the course of the McCament deposition showed that "the parties also met and conferred extensively throughout the course of the deposition" and that any further meet and confer efforts "would not bear fruit." In support of this assertion, AWI cites *Stewart, supra*, 87 Cal.App.4th at page 1006. *Stewart* is not similar to the present case. In *Stewart*, the Court of Appeal concluded that an off-the-record discussion of objections during the deposition satisfied counsel's obligation to informally resolve the dispute because the issue presented was relatively simple, immediate action was necessary due to an upcoming trial date and discovery cutoff, and opposing counsel would not be available to meet for two lengthy periods before trial. (*Id.* at pp. 1016-1017 & fn. 4.) None of those circumstances was present here. Meet and confer efforts might well have been

15

successful, at least in part, because, as the trial court found, it appeared that during the deposition some instructions not to answer were withdrawn and McCament answered the questions.

This case bears closer resemblance to *Townsend v. Superior Court, supra*, 61 Cal.App.4th at page 1431. In that case, the Court of Appeal likened the deposition to a "prize fight" between counsel and concluded "[a] reasonable and good faith attempt at informal resolution entails something more than bickering with deponent's counsel at a deposition." (*Id.* at pp. 1437, 1439.)

But regardless whether this case is similar to *Stewart*, or *Townsend*, neither, or another opinion, the question is whether, under the circumstances of *this* case, the trial court's decision exceeded the bounds of reason. It did not.

## DISPOSITION

The appeal from the order denying the motion to compel is dismissed. The order imposing sanctions against AWI and AWI's counsel is affirmed. Respondents to recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.


16